UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA SHAPPELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SUN LIFE ASSURANCE COMPANY; LINCOLN NATIONAL LIFE INSURANCE; EMPLOYERS INSURANCE COMPANY OF NEVADA; AND DOES 1 TO 100,<br><br>　　　　Defendants. | No.  2:10-CV-03020-MCE-EFB<br><br>**MEMORANDUM & ORDER** |

Teresa Shappell ("Shappell" or "Plaintiff") brings this action against both Lincoln National Life Insurance  ("Lincoln") and Sun Life Assurance Company ("Sun Life") (collectively "Defendants") because Defendants denied Plaintiff's long-term disability claims.  Plaintiff and Defendants submitted Motions for Judgment pursuant to Federal Rule of Civil Procedure 52.  (ECF Nos. 49, 57, and 56)[1]  Each party waived their right to trial.[2]

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1

After reviewing the motions, responses to the motions, and the record, the Court makes the following Findings of Facts, by a preponderance of the evidence, and Conclusions of Law as to Plaintiff's claims against Defendants.  The Court concludes that judgment should be entered in favor of Defendants.

## FINDINGS OF FACT[3]

On July 24, 2006, Employers Insurance Company of Nevada ("Employers") hired Plaintiff to be their Senior Vice President, Chief Strategy Officer in their Reno, Nevada, office.  Employers offered Plaintiff group long-term disability insurance as an employment benefit.  When Plaintiff began working for Employers in July 2006, Lincoln was Employer's long-term disability insurance provider.  Plaintiff became eligible for benefits under Lincoln's long-term disability policy on August 1, 2006.

Plaintiff has a long history of severe pelvic pain.  Plaintiff had a hysterectomy in May 2005 because of painful endometriosis.

On August 17, 2007, Plaintiff submitted a short-term disability benefit application to Lincoln.  Plaintiff wrote "in May [2007], I had a sudden and severe onset of pelvic pain on the lower left side…since that time the pain has increased with severity."  Lincoln approved Plaintiff's short-term disability claim.  On November 19, 2007, Lincoln asked Shappell to release her medical records so that Lincoln could determine whether Plaintiff sought treatment for her pelvic pain between May 1, 2006 and August 1, 2006.  Lincoln explained it needed to investigate this time period because Plaintiff stopped working within one year of Lincoln's plan becoming effective and their pre-existing condition exclusion applied to claims filed within the first year of coverage.

///

///

---

[3] None of the parties disputes the facts.  Plaintiff disputes the application of the facts.  The factual assertions are taken from Plaintiff's 20 exhibits unless otherwise specified

1   Lincoln's pre-existing condition exclusion states:

2   > This policy will not cover any total or partial disability…
3   > (1) which is caused or contributed to by, or results from a pre-existing condition; and (2) which begins in the first 12 months after the insured employee's effective date.
4   > "Pre-existing condition" means a sickness or injury for which the Insured Employee received treatment within 3 months
5   > prior to the insured employee's effective date. "Treatment" means consultation, care or services provided by a
6   > Physician. It includes diagnostic measures and the prescription, refill of prescriptions, or taking of any prescribed
7   > drugs or medicines.

Lincoln denied Plaintiff's long-term disability claim on December 24, 2007. Employers reported that Plaintiff's last day of work was July 31, 2007 (one day short of having Lincoln coverage for one year). However, Lincoln concluded that Plaintiff's last day of full-time work was July 5, 2007. Because Lincoln concluded that Plaintiff stopped working within the first year of coverage, Lincoln evaluated Plaintiff's medical records from May 1, 2006 through August 1, 2006 (the 3 months before Lincoln's coverage applied). Plaintiff saw doctors about pelvic pain nine times between May 2006 and August 2006; thus, Lincoln concluded that their pre-existing exemption applied and denied Plaintiff's claim.

Plaintiff appealed Lincoln's decision arguing that her last day of work was August 2, 2007. Plaintiff argued that according to Employers' policy, exempt employees (like her) worked a full day if they did any work during that day. Thus, if she sent one e-mail or made one phone call on August 2, 2007, Employers would consider that e-mail or phone call a full day of work. After Plaintiff's first appeal, Lincoln asked Employers for Plaintiff's log-on and log-off computer records, phone log, and work product from July 30, 2007 to August 2, 2007 to determine if Plaintiff's work on those days satisfied their definition (according to Lincoln's written long-term disability policy) of full-time work. Employers disclosed Plaintiff's remote computer access from July 30, 2007 to August 2, 2007. Plaintiff logged on to her computer on July 30, 2007 but not on July 31, August 1, or August 2.

3

Plaintiff accessed the building on July 31 but not on July 30, August 1 or August 2. Plaintiff sent several short e-mails on the morning of July 30, one e-mail on July 31, and a few e-mails on the morning of August 2. Plaintiff did not create, sign, or edit any work product between July 30 and August 2.

Payroll sheets indicate that Plaintiff's last full day of work was July 3, 2007. July 4, 2007 was a holiday. Plaintiff listed July 5, July 6, July 19, July 20, July 31 (half day), August 1, August 2 and August 3 as sick days. She also listed July 23-27 as vacation. Because Plaintiff ran out of "sick leave," the payroll specialist changed 28 hours of sick time to vacation leave and removed the half day of sick leave Plaintiff claimed on July 31 because Employers do not count half work days as absences for payroll purposes.

Lincoln denied Plaintiff's first appeal on July 16, 2006. Lincoln explained that while Employers considered Plaintiff employed until July 31, 2007 for payroll purposes, her July 2007 work did not meet Lincoln's policy's definition of active, full-time work. Lincoln defines "active work" as the "full time performance of all main duties of such employee's occupation." It defines full-time work as "the average number of hours the insured employee was regularly scheduled to work." Lincoln concluded that the employment records Employers submitted were consistent with partial but not full-time work throughout July 2007.

Plaintiff appealed Lincoln's decision a second time and Lincoln denied Plaintiff's claim again explaining that even Employers required their executives (like Plaintiff) to work at least 20 hours a week. Plaintiff did not work 20 hours a week in July 2007.

In December 2007, Plaintiff had a spinal cord stimulator installed to reduce her pelvic pain. Plaintiff returned to work at Employers on December 27, 2007. Plaintiff reported a day of sick leave on January 17, 2008. On January 25, 2008, Employers sent Plaintiff a letter terminating her employment.

Plaintiff filed a new disability claim with Lincoln on January 14, 2009, stating that Employers determined she was too disabled to work on January 20, 2009.

4

1 Lincoln denied the claim and explained that the January 2008 disability claim was a
2 continuation of her previous August 2007 disability claim that Lincoln denied.  Lincoln
3 also informed Plaintiff that Lincoln was no longer Employers long-term disability
4 insurance provider.

5     Plaintiff applied to Sun Life for long-term disability benefits on April 8, 2009.
6 Plaintiff became eligible for Sun Life benefits on January 1, 2008, pursuant to their
7 continuity of coverage and pre-existing condition provisions.

8     Sun Life's Continuity of Coverage provisions states:

> In order to prevent loss of coverage for an Employee when this policy replaces group [long-term disability] policy, the Employer had in force with another insurer… if the employee cannot satisfy the Pre-Existing Condition Exception of this Policy or if the pre-existing condition provision under the prior insurer's group [long-term disability] policy would apply, no [long term disability]benefit will be paid.

13 Sun Life defines a pre-existing condition as "during the 3 months prior to the
14 Employee's Effective Date of Insurance the Employee received medical treatment,
15 consultation, care or services…"

16     To investigate Plaintiff's claim, Sun Life reviewed Lincoln's entire file and
17 requested additional information from Plaintiff and Employers.  Sun Life interviewed
18 Plaintiff in September 2009 at her attorney's office.  It also obtained a vocational
19 specialist and pain management specialist to review Plaintiff's claim. Sun Life denied
20 Plaintiff's application for benefits on December 23, 2009, concluding that its pre-existing
21 condition policy applied.  Plaintiff sought treatment for pelvic pain between October 2007
22 and December 2007, the 3-month pre-existing condition period in Sun Life's plan.  After
23 reviewing Lincoln's entire record along with additional investigation, it agreed with
24 Lincoln's decision that Lincoln's pre-existing condition barred Plaintiff's claim.  Because
25 Sun Life reached this conclusion, its Continuity of Coverage provision did not apply.

26     Plaintiff appealed the denial on June 21, 2010, and Sun Life denied her appeal on
27 October 8, 2010.  Plaintiff filed suit against both Lincoln and Sun Life on November 5,
28 2010.

After Defendant denied Plaintiff's claim for long-term disability benefits, Plaintiff brought this action under 29 U.S.C. § 1132.

## CONCLUSIONS OF LAW

"A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties waived their right to a trial and all the parties agreed that the abuse of discretion standard applies in this case. (ECF Nos. 49, 57 and 56) However, Plaintiff argues that both parties abused their discretion when they denied her long-term disability benefits.

### A. Standard of Review under Abatie

A denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "When a plan unambiguously gives the plan administrator discretion to determine eligibility or to construe the plan's terms, a deferential abuse of discretion standard is applicable." Burke v. Pitney Bowes Inc. Long-Term Disability Plan, 544 F.3d 1016, 1032-24 (9th Cir. 2008) (citing Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006)). Accordingly, the Court will apply the abuse of discretion standard unless other factors mitigate against it.

Where a plan grants discretionary authority to the administrator, as does the plan in this case, the Court reviewing the denial of benefits is to apply an abuse of discretion standard.

///

However, the review should be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." Abatie, 458 F.3d at 967.  A conflict of interest decreases the level of discretion given to the plan where "the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting the plan terms incorrectly or by making decisions against the weight of evidence in the record." Id. at 968-69 (citations omitted).

Plaintiff contends that both Lincoln and Sun Life have conflicts of interest; however, Plaintiff does not provide any evidence or specific reasons why she believes conflicts of interest exist. (ECF No. 49 at 18.)  Plaintiff's only argument is that both Lincoln and Sun Life had a conflict of interest because Plaintiff's monthly disability benefit would have been $15,000 per month and neither company wanted to make such a large monthly payment. Id.  After reviewing the entire record, the Court does not find any evidence that a conflict of interest exists between Plaintiff and either Defendant.

Lincoln paid Plaintiff short-term disability benefits.  (ECF No. 49 at 7.)  Plaintiff concedes that both Lincoln and Sun Life communicated with her throughout the appeals process, explaining their denials in detailed, easy to understand language.  (ECF No. 49 at 16.)  Because Plaintiff's work history in July 2007 was material, Lincoln solicited Plaintiff's computer, phone and building access records to determine if Plaintiff was actively working in July 2007.  Sun Life did not rely on Lincoln's work product to reach its decision.  Sun Life interviewed Plaintiff, obtained medical and vocational experts to review Plaintiff's claim, sought additional employment records from Employers and reviewed Plaintiff's additional evidence.  These actions do not suggest that either Defendant failed to adequately investigate Plaintiff's claim.  Both Defendants sought extensive, reliable evidence before reaching their decision.

///

///

Because the Court finds no evidence of a conflict of interest making the abuse of discretion standard inappropriate, the Court will apply the abuse of discretion standard and the Court's skepticism of structural conflict of interest will be low.  Abatie, 458 F.3d at 968.

## B. Review of Lincoln's Decision

Because the applicable standard is abuse of discretion, the Court will review Lincoln's decision only to determine whether the decision was arbitrary or capricious. Barnett v. Kaiser Found. Health Plan, Inc., 32 F.3d 413, 415-16 (9th Cir. 1994).

Plaintiff's argument is that Lincoln should not have applied its pre-existing exception to her claim.  Plaintiff argues that she worked for Employers full-time until August 2, 2007; thus, Lincoln's long-term disability coverage would have applied for an entire year before she took medical leave in August 2007.  Because Lincoln insured her for an entire year, the pre-existing condition exception would not apply and Lincoln should pay her long-term disability benefits.

Plaintiff's argument fails.  Employers applied their policy's definition of "full-time" work.  (LFG-Shappell- 512)   According to Lincoln "full-time" work is defined as "the average number of hours the Insured Employee was regularly scheduled to work."  Id.  Employers classified Plaintiff as an executive and required that as an executive she work at least 20 hours per week.  (LFG-Shappell-441)  Employers paid Shappell throughout July 2007.  (LFG-Shappell- 411-415)  According to Plaintiff's July 2007 time sheets, she was out of the office at least nine days of a 20 day work month.  July 4, 2007 was a holiday.  Plaintiff listed July 5, July 6, July 19, July 20, July 31 (half day), August 1, August 2 and August 3 as sick days.  She also listed July 23-27 as vacation.

///

///

///

Because Plaintiff ran out of "sick leave," the payroll specialist changed 28 hours of sick time to vacation leave and removed the half day of sick leave Plaintiff claimed on July 31 because Employers do not count half work days as absences for payroll purposes. Because the date Plaintiff stopped working full-time was material to this case, Lincoln engaged in an extensive investigation of Plaintiff's work throughout July 30, 2007 to August 2, 2007. Lincoln requested and reviewed Plaintiff's e-mails from July 30, 2007 to August 2, 2007, computer logon and logoff records, and phone records. (LFG-Shappell-494-506 and 530-576). There is evidence that Plaintiff did some work on those days; however, Employers concluded it was consistent with part-time work. Lincoln concluded Plaintiff stopped working full time on July 5, 2007 after substantial investigation; its decision was not arbitrary or capricious.

Additionally, Lincoln reviewed a large number of objective medical records. In June 2007, Plaintiff reported that she could do no work to 50% of her work as a result of her pain. (LFG-Shappell-365) This report, coupled with the number of doctors' visits throughout June 2007, supported Lincoln's conclusion that Plaintiff stopped working full-time before her disability began on August 2, 2007.

Because Lincoln concluded that Plaintiff stopped working before Lincoln covered her for a year, the pre-existing condition exception applied. The pre-existing condition worked as follows: if Plaintiff sought any medical care for her pelvic pain between May 2006 and August 2006, Lincoln would consider her disability a pre-existing condition and not pay her long-term benefits. There is no factual dispute that Plaintiff sought treatment for her pelvic pain in May 2006 to August 2006. Lincoln applied its policy after reviewing evidence, medical records, and work records and did not pay Shappell's benefits. Plaintiff's health ailments are disabling and tragic; however, Lincoln's decision was not arbitrary or capricious. Lincoln did not abuse its discretion in denying Plaintiff's claim for long-term disability benefits.

///

///

9

C. <u>Review of Sun Life's Decision</u>

Because the applicable standard is abuse of discretion, the Court will review Sun Life's decision only to determine whether the decision was arbitrary or capricious. <u>Barnett,</u>32 F.3d 413 at 415-416.

Plaintiff argues that Sun Life abused its discretion denying Plaintiff benefits because it relied on Lincoln's erroneous decision and failed to engage in an independent evaluation. This argument fails because the facts do not support it. Sun Life did not rely on Lincoln's work product. Sun Life engaged in its own investigation of the evidence before concluding that pre-existing condition provisions applied to both Plaintiff's disability claims (August 2007 and January 2008 claim). Sun Life reviewed all the records Lincoln reviewed to reach its conclusion, along with the additional information Plaintiff submitted regarding her July 2007 claim. It reviewed Plaintiff's assistance table documenting what Plaintiff allegedly did each work day in July 2007. (Exh. 20, p. 2245) Plaintiff's former assistant, Lorena Fee, signed and dated the document May 20, 2010, nearly three years after the month passed.

After reviewing Lincoln's record, Sun Life concluded that it properly applied its own pre-existing condition exception; thus, Sun Life's continuity of coverage provision did not apply. Instead, Sun Life evaluated Plaintiff's January 2008 disability claim under its pre-existing provision. Sun Life focused on Plaintiff's medical records from October 1, 2008 to January 1, 2009 (the date Sun Life's policy went into effect). Lincoln did not evaluate this time period.  In order to reach its decision, Sun Life requested and reviewed more information from Plaintiff and Employers. (Exh. 6, p. 747 and Exh. 7, p. 775) Sun Life interviewed Plaintiff about her disability claim in September 2009. During the interview with Sun Life, Plaintiff explained that her pelvic area pain came back in January 2008 after the spinal stimulator stopped working. It also obtained a vocational specialist and pain management specialist to review Plaintiff's claim.

///

These are not actions of an insurance company relying on another insurance company's work.

Sun Life concluded and Plaintiff does not dispute that Plaintiff sought medical care for her pelvic care throughout October 1, 2009 to January 1, 2009.  Sun Life reasonably rejected Plaintiff's argument that her January 2008 disability was a new disability.  Objective medical evidence makes it clear that the spinal stimulator was an attempt to minimize Plaintiff's pelvic pain.

Based on the foregoing, the Court finds that Sun Life's decision was not arbitrary or capricious, and that Sun Life did not abuse its discretion in denying Plaintiff's claim for long-term disability benefits.

**CONCLUSION**

For the reasons set forth above, judgment shall be entered in favor of Defendants. Because judgment will be entered in favor of the Defendants, it is not necessary for the Court to award attorney's fees, costs or interest.

IT IS SO ORDERED:

Dated:  January 3, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT